UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**RODERICK SMITH,**

    **Defendant.**

Case No. 1:21-cr-127-8
JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

This cause comes before the Court on Defendant Roderick Smith's Motion for Bond Review (Doc. 83) and Motion for De Novo Review of Lower Court's Order of Pretrial Detention (Doc. 91) (collectively "Motions for Bond"). For the reasons stated more fully below, the Court **DENIES** Smith's Motions (Docs. 83, 91).

**BACKGROUND**

The Indictment in this case charges Smith with one count of Narcotics Conspiracy and two counts of Distribution of a Controlled Substance. (*See* Indictment, Doc. 34).

On November 18, 2021, Smith appeared before the Magistrate Judge for a detention hearing pursuant to 18 U.S.C. § 3142(f). (No. 1:21-mj-879, Doc. 12). During that hearing, the Magistrate Judge found that Smith satisfied the requirements for pretrial detention under § 3142(e), which states that the court must detain a defendant if it determines that "no condition or combination of conditions [would] reasonably assure the appearance of the [defendant] as required and the safety of any

1

other person and the community." Accordingly, the Magistrate Judge ordered Smith detained pending trial. (No. 1:21-mj-879, Doc. 14).

Subsequently, Smith filed his first Motion for Bond ("First Motion," Doc. 83) on February 25, 2022, appealing the Magistrate Judge's detention order. In that one-page Motion, Smith noted that he "has a place to live where he can be monitored by Pre-trial services," and "[t]hat monitoring [would] ensure both the safety of the community as well as [his] appearance at future Court dates." (*Id.* at #1444). Thus, Smith argued, pretrial release is appropriate under § 3142(e). (*Id.*). The government filed its opposition to Smith's First Motion on March 11, 2022. ("Opposition," Doc. 90).

Before the Court could rule on Smith's First Motion, however, Smith—through new counsel—filed a second[1] Motion for Bond ("Second Motion," Doc. 91) on March 12, 2022. There, Smith expanded on the argument from his First Motion that he is neither a danger to the community nor a flight risk. Specifically, he highlighted his strong roots in Cincinnati, lack of financial resources that would allow him to flee, and his comparatively minor role in the alleged narcotics conspiracy. (*Id.* at #1483–84). Smith's Second Motion also contended that Smith has several medical issues, including a hyperthyroid condition, Graves' Disease, and vitiligo, which were not being treated while Smith was detained at the Butler County Jail. (*Id.*). Thus, Smith argued, pretrial release was necessary to allow him to obtain proper medical treatment.

---

[1] Somewhat confusingly, Smith captioned this second motion as his "First Motion for Bond." (Doc. 91). For the sake of clarity, however, and to distinguish this Motion from its predecessor, the Court refers to it here as the "Second Motion."

On July 13, 2022, Smith filed a Supplement to his Second Motion ("Supplement," Doc. 110). There, Smith's counsel explained that Smith had apparently not received any treatment for his conditions when he was initially detained at Butler County Jail because Smith had not requested any medical care. (*Id.* at #1558). Smith's counsel then told Smith that he needed to specifically request medical care if any was needed. (*Id.*). According to the Supplement, Smith did so. (*Id.*). Nonetheless, at the time the Supplement was filed, roughly two months had elapsed, and Smith had still not received any treatment for his conditions. (*Id.*).

The government did not respond either to Smith's Second Motion or its Supplement. The Court held a hearing on Smith's two outstanding Motions for Bond on July 26, 2022. At that time, Smith's counsel provided another update, and explained that Smith had spoken with the jail's medical staff and begun receiving medication for at least some of his conditions. However, Smith maintained that pretrial release was still appropriate, because he was neither a flight risk nor a danger to the community; moreover, the Jail's slow response to Smith's previous requests for medical attention raised concerns that he would not receive adequate treatment for his conditions moving forward. The government, for its part, reiterated its opposition to releasing Smith at this juncture.

Having considered the parties' arguments, the Court concludes that the matter is now ripe for adjudication.

3

**LAW AND ANALYSIS**

When a magistrate judge orders a defendant detained pending trial under § 3142(e) and the defendant appeals to the district court, the "district court reviews [the] magistrate judge's decision *de novo*." *United States v. Rainey,* No. 20-cr-10005-1, 2020 U.S. Dist. LEXIS 89617, at *4 (W.D. Tenn. May 21, 2020); *United States v. Dailey,* No. 17-cr-20740, 2017 WL 5664185, at *2 (E.D. Mich Nov. 27, 2017); *United States v. Watkins,* No. 13-02, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (observing that, although the Sixth Circuit has not "spoken directly" on the appropriate standard of review when a defendant appeals a magistrate judge's detention order, "most district courts in the Sixth Circuit have applied the *de novo* standard of review").

Ordinarily, "[t]he default position of the law … is that a defendant should be released pending trial." *United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010). However, "[t]hat default is modified … for certain, particularly dangerous defendants. Specifically, when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention …." *Id.* Here, because Smith has been charged in the Indictment with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," this presumption in favor of detention applies. *See* 18 U.S.C. § 3142(e)(3)(A). To overcome that presumption, Smith "must produce evidence that he is neither a danger to the community nor a risk of flight." *United States v. Brooks,* No. 21-1646, 2021 U.S. App. LEXIS 33089, at *3 (6th Cir. Nov. 5, 2021). Although this "burden of

production is not heavy, [Smith] must introduce at least some evidence." *Id.* (quoting *Stone,* 608 F.3d at 945). For example, in *Brooks,* the Sixth Circuit found that the defendant had successfully met his burden of production, because he "presented some evidence that he was not a danger to the community: he was a lifelong resident of the district; his years-long girlfriend lived with him in the district; and his criminal history involved only misdemeanor convictions." *Id.* at *3–4.

Here, the Magistrate Judge determined that Smith likewise had presented adequate evidence at his bond hearing to satisfy his burden of production. (Detention Order, No. 1:21-mj-879, Doc. 14). The government does not really dispute that. (Opp'n, Doc. 90). Moreover, and in any event, after independently reviewing Smith's two Motions for Bond, the Court agrees with the Magistrate Judge's conclusion on this issue.

But that is not the end of the inquiry. If a defendant satisfies his burden of production, the burden of persuasion on the ultimate issue of detention shifts back to the government. *Stone*, 608 F.3d at 945. Even then, though, the presumption remains "one of several other factors that must be weighed by the district court under [18 U.S.C.] § 3142(g)." *Brooks*, 2021 U.S. App. LEXIS 33089, at *4. That is because the presumption is "not simply an evidentiary tool," but also "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945; *see also Brooks,* 2021 U.S. App. LEXIS 33089, at *4 ("[T]he presumption 'represents Congressional findings that certain offenders … are likely to continue to engage in criminal conduct undeterred either by

5

the pendency of charges against them or by the imposition of monetary bond or other release conditions.'" (quoting *Stone*, 603 F.3d at 946)). In deciding whether the government has carried its burden of persuasion, then, the question, as a general matter, is whether "special features" exist showing that the defendant's case is "outside the congressional paradigm." *Stone*, 608 F.3d at 946 (internal quotation marks omitted).

With that framework in mind, under 18 U.S.C. § 3142(g), the district court must also consider four other factors: "(1) 'the nature and circumstances of the offense[s],' including whether the offense[s are] controlled substances offense[s]; (2) 'the weight of the evidence against' the defendant; (3) 'the history and characteristics of the defendant'; and (4) 'the nature and seriousness of the danger to any person of the community that would be posed by' the defendant's release." *Brooks*, 2021 U.S. App. LEXIS 33089, at *4 (quoting 18 U.S.C. § 3142(g)). The Court addresses each below.

### a. The Nature And Circumstances Of The Offenses.

The first factor the Court must consider is "the nature and circumstances of the offense[s] charged, including whether the offense[s] … involve[d] … a controlled substance." 18 U.S.C. § 3142(g)(1). For example, in *Brooks,* the Sixth Circuit found that this factor weighed in favor of detention because the defendant's "only charged offense involved trafficking in large quantities of methamphetamine. His offense also involve[d] a substantial sentence of up to ten years to life imprisonment." *Brooks,* 2021 U.S. App. LEXIS 33089, at *4–5.

6

In this case, the government alleges that Smith was involved in a wide-ranging and long duration conspiracy to distribute controlled substances, including "one kilogram or more of mixtures and substances containing a detectable amount of heroin … and 400 grams or more of mixtures or substances containing a detectable amount of fentanyl." (Indictment, Doc. 34, #899–900). Smith faces a mandatory minimum term of ten years in prison on the Conspiracy charge, with the possibility of a sentence of up to life. (*Id.*). In addition, Smith has also been charged with two counts of Distribution of a Controlled Substance, for which he could also face significant terms of incarceration. (*Id.* at #900–01). These are serious crimes, made all the more serious when one considers the potential consequences of Smith's alleged drug distribution activities. Generally speaking, two milligrams of fentanyl is considered a potentially lethal dose. *See Facts about Fentanyl,* United States Drug Enforcement Administration (Apr. 29, 2021).[2] Here, Smith is accused of conspiring to traffic four hundred grams of a substance containing a detectable amount of fentanyl. Even if only a small percentage of that substance proves to be fentanyl, it would nonetheless be sufficient to kill hundreds—if not thousands—of people. In short, given the quantity of drugs allegedly involved, the dangers those drugs represented, the duration of the alleged conspiracy, and the severity of the potential sentence Smith faces, the Court concludes this factor favors continued detention.

---

[2] Available at https://www.dea.gov/resources/facts-about-fentanyl.

### b. The Weight Of The Evidence Against Smith.

Next, the Court turns to the weight of the evidence against Smith. Importantly, the Sixth Circuit has found that "[t]his factor goes to the weight of the evidence of *dangerousness*, not the weight of the evidence of the defendant's guilt." *Stone,* 608 F.3d at 948 (emphasis added); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (noting that § 3142(g) "neither requires nor permits a pretrial determination of guilt").

For example, in *United States v. Whigham,* a defendant accused of participating in a drug trafficking conspiracy argued that this factor favored pretrial release primarily because "the evidence he was involved a drug conspiracy [was] tenuous." No. 22-5444, 2022 U.S. App. LEXIS 19148, at *4 (6th Cir. July 12, 2022). The Sixth Circuit rejected the defendant's argument, however, finding that it went "to the weight of the evidence of his guilt, not his dangerousness." *Id.* Properly applied, the Sixth Circuit found the weight of the evidence factor favored continued detention, explaining that even though the defendant "ha[d] no prior convictions for drug trafficking and [a prior] conviction for possession of cocaine did not involve a firearm, the current offense involve[d] trafficking significant amounts of methamphetamine." *Id.* "Evaluated in th[at] context," the Court thus concluded, "the evidence support[ed] [the defendant's] detention." *Id.*

Similarly, in applying this factor in a recent case, the Northern District of Ohio noted that the defendant's "distant past involved some violent crimes, [but] those prior violent offenses [were] over twenty years old, and [the defendant] ha[d] not had criminal charges at all, excluding the charges in this case, for fifteen years." *United*

8

*States v. Staudohar,* No. 1:21-cr-533, 2021 WL 4340069, at *4 (N.D. Ohio Sept. 23, 2021). On the other hand, the court also noted that the offenses charged in that case "involve[d] threats of violence." *Id.* Moreover, the court also expressed concern that, after listening to an audio recording of one of those threats, the defendant "did not sound mentally well." *Id.* Nonetheless, the record showed that the defendant "did not take steps toward acting on the threats he made." *Id.* Thus, on final analysis, the court concluded that this factor "lean[ed] slightly in favor of release." *Id.*

Applying this factor to Smith, the Court concludes that the weight of the evidence here favors pretrial detention. The Court reaches this conclusion for two reasons. First, as the government notes, Smith has an extensive criminal history and has accumulated twenty different convictions. (Opp'n, Doc. 90, #1479). While some of the offenses at issue strike the Court as relatively minor, others—like Smith's prior convictions for drug trafficking—raise substantial concern that Smith would pose a danger to his community if released on bond. (*Id.*). Those concerns are compounded by the fact that Smith has allegedly failed to appear for court fifteen times in the past and incurred three probation violations. (*Id.*).

Second, as in *Whigham*, 2022 U.S. App. LEXIS 19148, at *4, "the current offense involve[d] trafficking significant amounts of" drugs—drugs that, as observed above, posed a substantial danger to a large number of people. (*See* Indictment, Doc. 34, #899–900). And the evidence of Smith's involvement in those activities is fairly strong. For example, the Criminal Complaint alleges that "law enforcement used a confidential and reliable informant to make multiple controlled purchases of

9

heroin/fentanyl from Smith. In total, law enforcement recovered over 200 grams of heroin/fentanyl that Smith sold the informant." (No. 1:21-mj-879, Doc. 4-1, #1170). The combination of those two thus presents strong evidence of dangerousness.

In his Second Motion, Smith counters that, even accepting the allegations in the Criminal Complaint and the Indictment as true, he was at most a relatively minor participant in the alleged trafficking conspiracy. (Sec. Mot., Doc. 91, #1484). Even if that's right, though, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers"—thus, even if Smith was a relatively minor participant in this alleged conspiracy, that provides little assurance that he is not a danger to his community. *Stone,* 608 F.3d at 947 n.6. Accordingly, the Court concludes that this factor weighs in favor of continued pretrial detention.

### c. Smith's History And Characteristics.

Having established that the first two factors both point in favor of continued pretrial detention, the Court next addresses the third § 3142(g) factor: Smith's "history and characteristics." Under the statute, this factor includes Smith's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at courts proceedings." 18 U.S.C. § 3142(g)(3)(A). As part of this factor, the Court must also consider "whether, at the time of the current offense or arrest, [Smith] was on probation, on parole, or on other release pending trial, sentencing,

appeal, or completion of sentence for an offense under Federal, State, or local law." *Id.* at § 3142(g)(3)(B).

Smith's history and characteristics point in competing directions. On the one hand, he has strong ties to Cincinnati. He has lived here for twenty years and has six children in the area. (Sec. Mot., Doc. 91, #1483). This local support network might reduce Smith's risk of flight and any danger he may pose to the community.

On the other hand, however, various factors in Smith's background raise significant cause for concern. As the government notes in its Opposition, Smith has not had any meaningful employment in four years, "presumably since his most recent release for drug trafficking." (Opp'n, Doc. 90, #1480). Moreover, as already discussed, Smith has a lengthy criminal history.

One additional factor the Court must consider is Smith's medical issues. According to Smith's Second Motion, he struggles with a hyperthyroid condition, Graves' Disease, and vitiligo. (Doc. 91, #1483–84). Smith also maintains that at least some of these conditions require ongoing treatment, which he did not receive during his initial period of detention at Butler County Jail. That being said, during the hearing the Court held on these Motions, Smith confirmed that—in the time since he had filed the instant Motions and their Supplement—he had attended a meeting with a member of the jail's medical staff and begun receiving medication. When the Court asked Smith's counsel if there was any further treatment Smith needed that he was not receiving, his counsel could not identify any specific treatments. He speculated, though, that Smith may require glasses in the future. Nonetheless, Smith's counsel

11

maintained that Smith's medical conditions weighed in favor of pretrial release, essentially because the jail's allegedly slow response to Smith's original requests for medical treatment indicated that the jail was not prepared to provide Smith with any new treatment he could require moving forward.

The Court is not persuaded. Indeed, at least at the present time it would appear that Smith has received all the medical treatment he has requested. Smith's mere speculation, then, that he may require treatment in the future that the detention facility will be unable or unwilling to provide strikes the Court as an inadequate basis to grant pretrial release. This is particularly true given the strong weight of the evidence of Smith's dangerousness to the community, which the Court has already discussed at length. *See United States v. Williams,* No. 7:16-15-KKC, 2017 U.S. Dist. LEXIS 5142, at *14 (E.D. Ky. Jan. 13, 2017) ("The Court does not doubt [the defendant's] earnestness in his need to seek medical assistance, and it is cognizant of the burdens detention may cause. But this concern has its limits in the overall calculus of determining whether the safety of the community can be reasonably assured if he is released.").[3]

Accordingly, the Court concludes that Smith's history and characteristics weigh in favor of continued pretrial detention.

---

[3] That said, if Smith encounters other medical issues in the future for which he is unable to receive medical treatment at Butler County Jail, he is free to file another Motion. Specifically, with regard to Smith's potential need for glasses, the Court notes it previously granted a request for temporary release in a different case to allow a defendant awaiting sentencing to obtain a new glasses prescription after she had tried and failed to obtain a new prescription at her place of detention. *United States v. Staten,* No. 1:18-cr-148 (S.D. Ohio Oct. 14, 2021). Whether the Court would grant a similar request for temporary release in Smith's case is, of course, not an issue currently before the Court.

12

### d. The Nature And Seriousness Of The Danger.

The final factor the Court must analyze under § 3142(g) is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In this case, Smith has been charged with one count of Narcotics Conspiracy and two counts of Distribution of a Controlled Substance. "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone,* 608 F.3d at 947 n.6, For example, in *Whigham,* the Sixth Circuit found that the defendant's indictment on drug trafficking alone was sufficient basis to conclude that the fourth § 3142(g) factor pointed in favor of pretrial detention. 2022 U.S. App. LEXIS 19148, at *5. Especially given some of the quantities allegedly involved here, including amounts of fentanyl that easily could prove fatal to hundreds—if not thousands, or even tens of thousands—of people (depending on the purity of the substance containing fentanyl), the Court likewise concludes that the fourth factor weighs in favor of continued detention.

## CONCLUSION

Putting it all together, the Court finds each of the above factors indicates that there are no conditions of release "that will reasonably assure the appearance of [Smith] as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). For that reason, the Court **DENIES** Smith's Motions for Bond (Docs. 83, 91).

**SO ORDERED.**

August 9, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**